# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| MATTHEW CLINE, | |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CHASE MANHATTAN BANK USA, NATIONAL ASSOCIATION | |
| Defendant, | Case No. 2:07cv650 |
| | District Judge Dale A. Kimball |
| CHASE MANHATTAN BANK USA, NATIONAL ASSOCIATION, | Magistrate Judge Paul M. Warner |
| Counterclaimant, | |
| v. | |
| MATTHEW CLINE, | |
| Counter-Defendant. | |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dale A. Kimball pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are Defendant and Counterclaimant Chase Manhattan Bank USA, National Association's ("Defendant") (1) motion

---

[1] *See* docket no. 13.

to strike the affidavits of Matthew A. Cline ("Plaintiff"),[2] (2) motion for summary judgment,[3]

and (3) motion to confirm the arbitration award.[4]  The court has carefully reviewed the

memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the United States District

Court for the District of Utah Rules of Practice, the court elects to determine the motions on the

basis of the written memoranda and finds that oral argument would not be helpful or necessary.

*See* DUCivR 7-1(f).

## RELEVANT BACKGROUND

This case arises from a dispute over credit card debt between the cardholder, Plaintiff,

and the credit card issuer, Defendant.  In early January 2006, Plaintiff opened his account with

Defendant.[5]  Defendant sent Plaintiff a credit card and a Cardmember Agreement (the

"Agreement") for the account.[6]  In the first section of the Agreement under the heading

"ACCEPTANCE OF THIS AGREEMENT" it states:

> You will be bound by this agreement if you or anyone authorized by you use your
> account for any purpose, even if you don't sign your card.  Whether you use your
> account or not, you will be bound by this agreement unless you cancel your
> account within 30 days after receiving your card and you have not used your
> account for any purpose.[[7]]

---

[2] *See* docket no. 43.

[3] *See* docket no. 29.

[4] *See* docket no. 30.

[5] *See* docket nos. 1, 32, 34.

[6] *See* docket no. 32, ¶ 5.

[7] Docket no. 32, ¶ 5.

2

The Agreement also includes a provision for the arbitration of claims, which states in

relevant part:

> **ARBITRATION AGREEMENT**
> PLEASE READ THIS AGREEMENT CAREFULLY.  IT PROVIDES THAT
> ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.
> ARBITRATION REPLACES THE RIGHT TO GO TO COURT. . . . IN THE
> ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY
> OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING
> CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO
> PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY
> OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE
> ACTIONS).  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT
> TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE
> DECISION MAY BE MORE LIMITED.  EXCEPT AS OTHERWISE
> PROVIDED BELOW, THOSE RIGHTS ARE WAIVED . . . .
>
> . . . .
>
> Either you or we may, without the other's consent, elect mandatory, binding
> arbitration of any claim, dispute or controversy by either you or us against the
> other . . . arising from or relating in any way to the . . . Agreement . . . . This
> Arbitration Agreement governs all [c]laims[,] . . . includ[ing] [c]laims regarding
> the applicability of this Arbitration Agreement or the validity of the entire . . .
> Agreement . . . .[8]

 The Agreement provides that an arbitration may be initiated by filing a claim with either the

American Arbitration Association or National Arbitration Forum.[9]

The Agreement also contains a choice of law provision, which states:

> **GOVERNING LAW**
> THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR
> ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN
> ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE

---

[8] Docket no. 32, Exhibit A.

[9] *See id.* at ¶ 17.

LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO
CONFLICT-OF-LAW PRINCIPLES.  THE LAW OF DELAWARE, WHERE
WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER
WHERE YOU LIVE OR USE THE ACCOUNT.[10]

On January 11, 2006, Plaintiff first authorized charges to the account.[11]  On March 7, 2006, Plaintiff made his first payment on the account and continued to make additional payments in June, July, and August of 2006.[12]  On June 19, 2006, Plaintiff made a billing inquiry with Defendant, presumably pursuant to the Truth in Lending Act ("TILA").  *See* 15 U.S.C. § 1666(a).  Defendant, however, did not respond.[13]

The date of the last payment received on the account was August 2, 2006.[14]  Plaintiff failed to make any further payments on the account.[15]  As a result, on March 30, 2007, Defendant wrote off the account balance as bad debt and referred the account to arbitration.[16]  At that time, the balance due on the account was $6196.55.[17]

While Plaintiff admits to receiving an agreement from Defendant that governed his account, he contends that it did "not contain any provision or clause requiring the parties to

---

[10] *Id.* at ¶ 6.

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶ 14.

[13] *See* docket no. 1, Exhibit A ¶¶ 7-12.

[14] *See* docket no. 32, ¶ 20.

[15] *See id.* at ¶ 22.

[16] *See id.* at ¶ 11.

[17] *See id.* at ¶ 23.

4

submit disputes to binding arbitration," nor did it provide that Defendant could amend the terms of the agreement.[18]  Plaintiff further asserts that he did not receive "notice of any intended change or addition to the terms of the account agreement."[19]  Plaintiff states, however, that he "is not currently in possession of the account agreement, but will seek to obtain a copy thereof in discovery and/or will seek leave of court to amend [the] complaint to incorporate a copy of said contract at that time when a copy can be ascertained."[20]  The court notes, however, that the discovery deadline in this matter passed on March 31, 2008,[21] and Plaintiff has not sought an extension of the discovery period.

On May 15, 2007, Defendant filed an arbitration claim against Plaintiff in the National Arbitration Forum to collect the balance due on the account, interest, and costs and attorney fees associated with collecting on the account.[22]  Plaintiff was served with the arbitration claim filed by Defendant and with an arbitration hearing notice.[23]  Plaintiff filed an objection to the arbitration.[24]  In his objection, Plaintiff asserted that he "never consented or agreed to any contract of adhesion containing a forum selection clause that would subject [him] to the

---

[18] Docket no. 34-2, ¶¶ 7, 8.

[19] *Id.* at ¶ 9.

[20] *Id.* at ¶ 6.

[21] *See* docket no. 11.

[22] *See* docket no. 32, ¶ 24.

[23] *See id.*, Exhibit C.

[24] *See* docket no. 35-3.

jurisdiction of the National Arbitration Forum, or any other [a]rbitration forum" and that he is "not in receipt of any documentation stipulating that [he is] required to arbitrate."[25]  Plaintiff also stated that he would "not respond to any further communications regarding this [a]rbitration [c]laim."[26]

Notwithstanding Plaintiff's objection, the arbitration went forward.  On July 17, 2007, an arbitration award was entered in favor of Defendant and against Plaintiff in the amount of $7053.65.[27]  The arbitrator found that the parties "entered into a written agreement to arbitrate their dispute" and that the Agreement "is valid and enforceable and governs all the issues in dispute."[28]

Plaintiff filed suit in the Fourth Judicial District Court, State of Utah, on August 3, 2007.[29]  On August 30, 2007, Defendant removed the case to the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1441.[30]  In Plaintiff's original complaint, he asserted claims for violation of TILA and breach of contract.[31]  Defendant filed a counterclaim alleging that this lawsuit arises from a fraudulent debt relief scheme and requesting that this court

---

[25] Docket no. 35-3, ¶¶ 1, 7.

[26] *Id.* at ¶ 6.

[27] *See* docket no. 32, Exhibit C.

[28] *Id.*

[29] *See* docket no. 1, Exhibit A.

[30] *See* docket no. 3.

[31] *See* docket no. 1, Exhibit A.

confirm the arbitration award as a judgment pursuant to the Federal Arbitration Act  (the

"FAA").[32]  *See* 9 U.S.C. § 9.  Specifically, Defendant asserts that Plaintiff purchased a debt

elimination package from an internet-based company called North American Educational

Services ("NAES") that promises customers it will eliminate or substantially reduce their credit

card debt through the use of form dispute letters and litigation.[33]  Defendant also contends that

Plaintiff and his wife have at least four other similar lawsuits pending against Defendant and

other lenders.[34]

By stipulation of the parties, Plaintiff's TILA claim has been dismissed with prejudice.[35]

Accordingly, the only remaining claims to be decided by this court are (1) Plaintiff's breach of

contract and (2) Defendant's request for an order confirming the arbitration award pursuant to 9

U.S.C. § 9.

## ANALYSIS

A motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure is

appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(c).  "As a matter of law, the movant must show entitlement to summary

disposition beyond all reasonable doubt."  *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp.

---

[32] *See* docket no. 3.

[33] *See* docket nos. 3, 31.

[34] *See* docket no. 31.

[35] *See* docket no. 20.

1085, 1089 (D. Utah 1992) (quotations and citations omitted).  Once the movant demonstrates an absence of a genuine issue of material fact, the nonmovant cannot simply rest upon his or her pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002) (quotations and citation omitted).

To defeat a motion for summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsashita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a plaintiff must come forward with some evidence establishing his claim.  *See id.*

> The mere existence of a scintilla of evidence in support of the nonmovant's position, however, is insufficient to create a dispute of fact that is genuine.  An issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Planned Parenthood of Rocky Mountains Servs. Corp. v. Owens*, 287 F.3d 910, 916 (10th Cir. 2002) (quotations and citation omitted).

### A.  Motion to Strike Affidavits

As an initial matter, Defendant asks this court to strike Plaintiff's affidavits because his affidavit testimony constitutes an attempt to create a sham issue of fact or, in the alternative, fails to comply with rule 56(e) of the Federal Rules of Civil Procedure.  Plaintiff has failed to file a responsive pleading, and the time for doing so has passed.  While the court could grant Defendant's motion on this ground alone, *see* DUCivR 7-1(d) ("Failure to respond timely to a

motion may result in the court's granting the motion without further notice."), the court will determine Defendant's motion on the merits.

Defendant argues that the majority of Plaintiff's affidavit testimony contradicts Plaintiff's sworn deposition testimony and attempts to create a sham issue of fact. The court agrees. On March 13, 2008, Plaintiff repeatedly testified at his deposition that he has no recollection of reading the Agreement or any of its terms or conditions.[36] For example, at his deposition Plaintiff stated, "I don't remember the exact agreement that was sent with this card. I did and have received an agreement with every account that I have ever opened."[37] When asked whether he had a recollection of reading the Agreement, Plaintiff stated, "I don't, no."[38] When presented with the Agreement at his deposition, Plaintiff stated, "I don't have any way, unfortunately, of affirming that this is the same agreement with that card. I wouldn't be able to acknowledge that."[39] Conversely, when asked whether he had any way of knowing that the Agreement was not the cardmember agreement that he received with his credit card, Plaintiff replied, "I don't. I don't . . . ."[40]

---

[36] *See* docket no. 44, Exhibit A.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

Despite Plaintiff's deposition testimony, on May 20, 2008, Plaintiff filed two affidavits with the court[41] purporting to set forth some of the terms and conditions of the cardmember agreement sent to him by Defendant.  In Plaintiff's affidavit opposing Defendant's motion to confirm the arbitration award, Plaintiff testified that "the agreement presented by Defendant to the National Arbitration Forum is not the agreement governing" the credit card account that is subject of this lawsuit.[42]  In that same affidavit, Plaintiff further stated that "the account agreement is governed by a choice of law provision favoring the laws of my home state of UTAH."[43]  In the affidavit opposing Defendant's motion for summary judgment, Plaintiff stated that "the contract submitted by Defendant setting forth any alleged terms and conditions is not the agreement I received."[44]  Additionally, in his memorandum in opposition to Defendant's motion to confirm the arbitration award Plaintiff states that he "is not currently in possession of the account agreement, but will seek to obtain a copy thereof in discovery and/or will seek leave of court to amend [the] complaint to incorporate a copy of said contract at that time when a copy can be ascertained."[45]  To date, Plaintiff has failed to provide this alleged alternative cardmember agreement to either the court or to Defendant.

---

[41] *See* docket nos. 35 and 38.

[42] Docket no. 35, ¶ 9.

[43] *Id.* at ¶ 15.

[44] Docket no. 38, ¶ 6.

[45] Docket no. 34-2, ¶ 6.

While in general a court may not disregard an affidavit simply because it conflicts with the affiant's prior sworn testimony, a court may disregard an affidavit when it concludes that the affidavit constitutes an attempt to create a sham issue of fact.  *See Burns v. Bd. of County Com'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).  In determining whether an affidavit constitutes an attempt to create a sham issue of fact, the Tenth Circuit has set forth the following factors for courts to consider: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain."  *Franks*, 796 F.2d at 1237.

Applying the above factors to the instant case, the court concludes that Plaintiff is attempting to create a sham issue of fact.  First, while Plaintiff is representing himself in this matter and appeared pro se at his deposition, Plaintiff was afforded an opportunity at the end of the deposition to clarify his testimony or add anything he deemed relevant.  Plaintiff made several statements but did not clarify or explain his previous testimony regarding the original cardmember agreement he received with his credit card.  Second, Plaintiff's affidavit was not based on newly discovered evidence.  In fact, Plaintiff states in his affidavit that he is not in possession of the original cardmember agreement that he alleges contained a Utah choice of law provision but did not contain an arbitration provision.  Third, Plaintiff's affidavits do not make any reference to the statements in his deposition or attempt to clarify his previous testimony.

Furthermore, the language used in Plaintiff's affidavits is virtually identical to that of

11

other NAES customers engaged in similar litigation.[46]  The court finds it difficult to believe that

each of these cardholders independently drafted affidavits with the same factual allegations,

using nearly identical language, based on their own personal experiences.[47]  The court finds this

to be further evidence of Plaintiff's attempts to create a sham issue of fact.

      Based on the foregoing, the court concludes that by filing affidavits that conflict with his

previous deposition testimony, Plaintiff is attempting to raise a sham issue of fact.  As such, the

court recommends that the district court disregard Plaintiff's affidavits in its consideration of

Defendant's motions for summary judgment and **GRANT** Defendant's motion to strike.

### B.  Breach of Contract

      Defendant moves this court for an order granting summary judgment on Plaintiff's

remaining cause of action: breach of contract.  In his First Amended Complaint, Plaintiff alleges

that Defendant breached the original contract between Plaintiff and Defendant by submitting its

dispute with Plaintiff to arbitration in the National Arbitration Forum.  While Plaintiff contends

that the Agreement did not contain an arbitration clause nor did it include a Delaware choice of

law provision, Plaintiff fails to provide evidentiary support for these contentions, aside from his

affidavits.  As stated above, this court recommends that Plaintiff's affidavits be stricken because

Plaintiff provided them to the court in an attempt to create a sham issue of fact.  Accordingly,

---

[46] *See* docket no. 44, Exhibit B.

[47] The court recognizes that Defendants have cited to two cases that are remarkably
similar to the instant case.  *See Millan v. Chase Bank USA, N.A.*, 533 F. Supp. 2d 1061 (C.D.
Cal. 2008); *Carmack v. Chase Manhattan Bank USA*, 521 F. Supp. 2d 1017 (N.D. Cal. 2007).
There are uncanny similarities in the language of letters, affidavits, and pleadings submitted by
the plaintiffs among these three cases.  The court does not believe this to be a mere coincidence.

this court will not consider Plaintiff's affidavits and will consider only the Agreement provided by Defendant.

The Agreement provides that Plaintiff will be bound by its terms and provisions if he authorizes charges to the account or fails to cancel the card within thirty days of receiving it, provided no charges had been authorized.  On January 11, 2006, shortly after Plaintiff opened the account, Plaintiff authorized charges to it.  While Plaintiff initially made regular payments on the account, Plaintiff ceased making payments after the August 2, 2006 payment.  On March 30, 2007, after Plaintiff had gone over seven months without making any payments, Defendant wrote off the account as bad debt and referred the account to arbitration as provided in the Agreement.

The arbitration provision in the Agreement provides that all claims relating to the Agreement are to be resolved by binding arbitration including "[c]laims regarding the applicability of this Arbitration Agreement or the validity of the entire . . . Agreement."[48]  Thus, the parties agreed that an arbitrator is to decide all disputes including those relating to the validity of the Agreement.  Furthermore, the United States Supreme Court has held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).  The arbitrator in this matter specifically held that "the parties entered into a written agreement to arbitrate their dispute" and that the "arbitration agreement is valid and

---

[48] Docket no. 32, Exhibit A.

13

enforceable and governs all the issues in dispute."[49]  Based on the arbitrator's ruling, this court

concludes that the parties agreed to arbitrate their claims pursuant to the Agreement.  Plaintiff

received the Agreement with his credit card.  The Agreement contained an arbitration provision

and a provision that Plaintiff accepted the terms and conditions of the Agreement if he

authorized charges to the account.  Plaintiff then authorized charges to the account, evidencing

his acceptance of the terms and conditions of the Agreement, including the agreement to submit

all disputes to arbitration.  Therefore, this court further concludes that Defendant did not breach

the Agreement by seeking resolution of its dispute with Plaintiff before the National Arbitration

Forum.  Accordingly, this court recommends that Defendant's motion for summary judgment as

to Plaintiff's remaining claim be **GRANTED**.

### C.  Motion to Confirm Arbitration Award

Defendant also filed a motion requesting that the court confirm the arbitration award.

Because the only cause of action in Defendant's counterclaim is a claim seeking confirmation of

the arbitration award as a judgment pursuant to 9 U.S.C. § 9 of the FAA, the court will treat this

motion as a motion for summary judgment on its counterclaim.

The scope of review of an arbitration award is extremely narrow.  *See, e.g.*, *Brown v.

Coleman*, 220 F.3d 1180, 1182 (10th Cir. 2000) ("[W]e give extreme deference to the

determination of the arbitration panel for the standard of review of arbitral awards is among the

narrowest known to law." (quotations and citation omitted)).  The FAA provides that a court

---

[49] *Id.*, Exhibit C.

14

"must grant an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.

> Under § 10 of the FAA, a district court is only permitted to vacate an arbitration award if it finds that: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone a hearing, in refusing to hear evidence, or in misbehaving in some other way; or (4) the arbitrators exceeded their powers or imperfectly executed them.

*Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001); *see* 9 U.S.C. § 10(a)(1)-(4).

Further, under § 11 of the FAA, a district court may modify or correct an arbitration award where (1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award"; (2) "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; or (3) "the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11.  The Tenth Circuit has also recognized "'a handful of judicially created reasons' that a district [court] may rely upon to vacate an arbitration award, and these include violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing."  *Sheldon*, 269 F.3d at 1206 (citations omitted).

Plaintiff contends that the arbitrator exceeded his authority by ruling on the dispute when there was no valid agreement to arbitrate between Plaintiff and Defendant.  Plaintiff argues that Defendant has failed to demonstrate the existence of a valid arbitration agreement, and, as such, this court does not have subject matter jurisdiction to confirm an arbitration award that was obtained without authority.  Plaintiff further contends that Defendant obtained the arbitration

award, in part, by the arbitrator's partiality, corruption, and misconduct.  Specifically, Plaintiff states, "One cannot help but question the impartiality of a forum that stands to gain considerable future business and income from Defendant (who has the potential to file thousands of claims annually) and the likelihood of no future business from Plaintiff (who objected to the arbitration process as a whole)."[50]

The court concludes that Plaintiff's unsupported objections to Defendant's motion do not provide sufficient grounds to adequately contest confirmation of the arbitration award.  First, Defendant has established the existence of a valid agreement to arbitrate.  Specifically, as stated above, it is undisputed that (1) Plaintiff received the Agreement with his credit card; (2) the Agreement contained a binding arbitration provision; (3) the Agreement contained a provision that by authorizing charges to the account, Plaintiff accepted the terms and conditions of the Agreement; and (4) Plaintiff authorized charges to the account.  Accordingly, the court concludes that Plaintiff agreed to submit all disputes, including arbitrability, to binding arbitration.

Second, while Plaintiff asserts that the arbitrator was biased in favor of Defendant, Plaintiff has provided absolutely no evidence for this assertion.  "For an award to be set aside, the evidence of bias or interest of an arbitrator must be direct, definite and capable of

---

[50] Docket no 34-2.  Again, the court recognizes that this language is nearly identical to the language of a strikingly similar case from the Northern District of California. *See Carmack*, 521 F. Supp. 2d at 1026 ("Plaintiff seems to plead that the [National Arbitration Forum] is biased in favor of Chase Manhattan Bank: 'One cannot help but question the impartiality of a forum that stands to giant considerable future business and income from Defendant . . . and the likelihood of no future business from Plaintiff.'").

demonstration rather than remote, uncertain, or speculative." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).  Plaintiff's bald assertions that the National Arbitration Forum must be biased in favor of Defendant because they rely upon Defendant for business falls into this latter category of "remote, uncertain, or speculative" evidence.  *Id.*  "[I]t is only clear evidence of impropriety which justifies the denial of summary confirmation of an arbitration award."  *Id.*  Plaintiff has failed to provide any evidence, much less "clear evidence of impropriety."  *Id.*

Moreover, the Tenth Circuit has held that "[c]ourts have created a basic requirement that an arbitrator must grant the parties a fundamentally fair hearing."  *Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir.1994).  "[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decisionmakers are not infected with bias." *Id.*  Plaintiff received a fundamentally fair hearing.  Specifically, Plaintiff was served with the arbitration claim filed by Defendant and with an arbitration hearing notice.  In fact, Plaintiff filed an objection to the arbitration.  Plaintiff had the opportunity to be heard and to present evidence to the arbitrator.  He chose not to do so.  Accordingly, the court concludes that Plaintiff received a fundamentally fair hearing before the arbitrator in this matter.

Based on the foregoing, the court concludes that Plaintiff has failed to demonstrate that the arbitration award should be "vacated, modified, or corrected."  9 U.S.C. § 9.  Because a court "must grant an order [confirming an arbitration award] unless the award is vacated, modified, or

17

corrected," *id.*, this court recommends that Defendant's motion be **GRANTED** and the arbitration award be confirmed.

<u>**RECOMMENDATION**</u>

Based on the foregoing analysis, **IT IS HEREBY RECOMMENDED**:

1. Defendant's motion to strike Plaintiff's affidavits[51] be **GRANTED**.

2. Defendant's motion for summary judgment[52] be **GRANTED**.

3. Defendant's motion to confirm the arbitration award[53] be **GRANTED**.

\* \* \* \* \* \* \*

Copies of the foregoing report and recommendation are being sent to the parties who are hereby notified of their right to object. The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections to both factual and legal conclusions may constitute a waiver of those objections on subsequent appellate review.

**IT IS SO ORDERED.**

DATED this 19th day of August, 2008.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[51] *See* docket no. 43.

[52] *See* docket no. 29.

[53] *See* docket no. 30.